UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE NATIONAL COUNCIL FOR          *
INCARCERATED AND FORMERLY         *
INCARCERATED WOMEN AND GIRLS,     *
                                  *
         Plaintiff,               *
                                  *
                                  *      Civil Action No. 1:25-cv-11889-IT
         v.                       *
                                  *
ROYAL BLUE HOSPITALITY, LLC, d/b/a *
THE EL CONQUISTADOR RESORT,       *
                                  *
         Defendant.               *

MEMORANDUM & ORDER

March 23, 2026

TALWANI, D.J.

Plaintiff The National Council for Incarcerated and Formerly Incarcerated Women and

Girls ("National Council") brings this action against Defendant Royal Blue Hospitality, LLC,

d/b/a The El Conquistador Resort ("Royal Blue"). Now pending before the court are National

Council's Motion for a Preliminary Injunction Staying Arbitration [Doc. No. 3] and Royal Blue's

Motion to Dismiss [Doc. No. 17].

For the following reasons, National Council's Motion for a Preliminary Injunction Staying

Arbitration [Doc. No. 3] is GRANTED, and Royal Blue's Motion to Dismiss [Doc. No. 17] is

DENIED.

I.       Factual Background

National Council is a Massachusetts based non-profit organization headquartered in

Roxbury, Massachusetts. Verified Am. Compl. ¶¶ 11, 18 [Doc. No. 27]. Royal Blue is a limited

liability company with a principal place of business in Fajardo, Puerto Rico, id. ¶ 12, and the

members of Royal Blue's parent company, TT Investment LLC, are all natural persons with

residency and citizenship in Puerto Rico, Def.'s Supp. Rule 7.1 Corporate Disclosure Statement, Attach. 1, ¶ 3 [Doc. No. 28-1]. Royal Blue runs the El Conquistador resort and conference center ("El Conquistador") in Fajardo, Puerto Rico. Verified Am. Compl. ¶ 13 [Doc. No. 27].

National Council holds an annual conference (the "Conference"), with past conferences drawing close to 1,000 attendees. Id. ¶ 19. In early 2023, National Council inquired about holding the Conference at El Conquistador. Id. ¶ 22. Thereafter, Royal Blue's Director of National Accounts, Pia Carpenter,[1] contacted National Council, and spoke with Kimberly Newsom, National Council's Executive Assistant to the Executive Director. Id. ¶ 26. Newsom explained to Carpenter that the Conference was scheduled for October 5 to 8, 2023, and would require conference space, audio-visual services, food, and accommodation for roughly 600 attendees. Id. ¶¶ 27–28. Newsom told Carpenter that National Council planned to pay for a block of 170 rooms for its staff, speakers, and sponsored attendees, and that the remaining attendees would book and pay for their rooms themselves. Id. ¶¶ 29–31.

In the Spring of 2023, Carpenter met with Andrea James, the founder and Executive Director of National Council, in Boston, Massachusetts, to discuss the Conference. Id. ¶ 36. Carpenter took James out to dinner and to see a musical in Boston. Id. ¶ 38. During the visit, Carpenter assured James that El Conquistador had capacity for the 600 Conference attendees. Id. ¶ 37.

In March 2023, James travelled to Puerto Rico to do a walkthrough of El Conquistador. Id. ¶ 39. James met with the General Manager, Jack Slim, and the Director of Sales and Marketing, Louis Mendez. Id. ¶ 40. Noting her concern that many of the rooms were under construction after

---

[1] Carpenter worked out of New York City and was El Conquistador's group sales representative, covering Massachusetts. Verified Am. Compl. ¶ 23 [Doc. No. 27].

sustaining damage from Hurricane Maria, James questioned Carpenter, Slim, and Mendez regarding the capacity of the hotel. Id. ¶¶ 41–43. Carpenter, Slim, and Mendez assured James that construction would be completed by October and that there would be capacity for all 600 attendees. Id. ¶ 43.

On May 15, 2023, James, on behalf of National Council, signed the agreement to hold the Conference at El Conquistador on October 5 to 8, 2023 (the "Agreement"). Id. ¶ 46; see Pl.'s Mot. for Prelim. Inj. Ex. A, ECF 13 ("Program Agreement") [Doc. No. 3-1]. The Agreement required National Council to reserve 170 rooms for staff and guests (paying for 50 rooms by October 4, and 120 rooms during the conference) and provided for a food package and dining space for the expected 600 attendees, with a discounted rate for the first fifty attendees booking their own rooms. Id. ¶¶ 47–49. The Agreement also included the following arbitration clause:

> The parties agree that any dispute in any way arising out of or relating to this agreement, other than disputes involving patents, trademarks, trade dress, copyrights, trade secrets, false advertising, false representation, unfair competition and/or infringement of intellectual property rights, will be solved by arbitration to the American Arbitration Association, pursuant to the organization's rules in the state and the city in which the hotel is located and pursuant to that State's law as the governing law. The parties agree that any arbitration award will be enforceable in state or federal court. The prevailing party in arbitration or court proceeding will be entitled to an award of its reasonable costs and attorney fees and pre and post judgment interest.

Program Agreement ECF 12 [Doc. No. 3-1].

In May 2023, before Royal Blue executed the Agreement, James traveled to El Conquistador for a second time, during which Slim and Mendez again assured James that El Conquistador could accommodate all 600 attendees. Verified Am. Compl. ¶ 53 [Doc. No. 27]. On May 31, 2023, Mendez signed the Agreement on behalf of Royal Blue. Id. ¶ 54. Shortly thereafter, National Council wired Royal Blue a $164,781 deposit. Id. ¶ 55. Sometime around June 2023,

Carpenter again traveled to Boston, Massachusetts and met with James, reiterating El Conquistador's capacity to hold 600 attendees during the Conference. Id. ¶ 56.

In mid-July 2023, attendees were able to book only 24 of the 50 discounted rooms at El Conquistador. Id. ¶ 60. Attendees called El Conquistador and were informed that the hotel was sold out during the dates of the Conference. Id. ¶¶ 61–62. James texted Carpenter inquiring about the shortage of rooms, and Carpenter responded with a text (that appears to have been meant for someone else): "[w]hy would we tell her there was another group? Ughhhhhhh[.]" Id. ¶ 66. James also contacted Slim about his "misrepresentations," and he did not deny them but instead replied, "[i]t's my job to sell rooms." Id. ¶ 67.

Based on El Conquistador's capacity issues, National Council relocated the Conference to another venue in Puerto Rico. Id. ¶¶ 68–69. Treating the Agreement with Royal Blue as void, National Council demanded the return of the $164,781 deposit. Id. ¶¶ 70–71. Royal Blue refused and the parties negotiated for the return of the deposit for several months, with no resolution. Id. ¶¶ 71–74.

On May 19, 2025, National Council sent Royal Blue a demand letter. Id. ¶ 75. On June 16, 2025, Royal Blue filed a demand for arbitration with the American Arbitration Association ("AAA") in Puerto Rico, seeking $357,105.00 plus interest and attorney's fees. Id. ¶ 78.

## II.   Procedural Background

National Council filed suit against Royal Blue, asserting diversity jurisdiction and alleging three counts: a violation of Mass. Gen. Laws ch. 93A ("Chapter 93A"), Fraudulent Misrepresentation, and Declaratory Judgment Pursuant to 28 U.S.C. § 2202. Compl. ¶¶ 9, 80–100 [Doc. No. 1]. With its Complaint, National Council filed the pending Motion for a Preliminary

4

Injunction Staying Arbitration [Doc. No. 3].[2] Royal Blue responded with its pending Motion to Dismiss [Doc. No. 17]. National Council subsequently filed its Verified First Amended Complaint [Doc. No. 27], with the parties' agreement that the pending Motion to Dismiss [Doc. No. 17] should be treated as directed towards the Verified First Amended Complaint [Doc. No. 27]. See Assented-to Motion for Leave to File [Doc. No. 25].

### III.    Motion to Dismiss

#### A.    *Lack of Subject Matter Jurisdiction*

Royal Blue asserts first that this court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because National Council's claims are subject to arbitration. Def.'s Mem. ISO Mot. to Dismiss 4 ("Def.'s Mem.") [Doc. No. 22]. But "[a]n agreement to arbitrate does not divest a court of its jurisdiction." Skirchak v. Dynamics Rsch. Corp., 508 F.3d 49, 56 (1st Cir. 2007) (citing DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 77 (1st Cir. 2000)).

Here, the court has subject matter jurisdiction based on diversity of citizenship. Diversity jurisdiction requires that the case arise between "citizens of different States" and have an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a)(1). A "corporation is considered to be a citizen of its state of incorporation as well as the state where it has its principal place of business." Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1236 (1st Cir. 1991) (citing 28 U.S.C. § 1332(c)(1)). "[T]he citizenship of a limited liability company is determined by the citizenship of all its members." Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54 (1st Cir. 2006).

---

[2] The parties subsequently agreed to stay arbitration until this court resolved National Council's Motion for a Preliminary Injunction Staying Arbitration [Doc. No. 3]. See Pl.'s Suppl. Cert. Pursuant to Local Rule 7.1(a)(2) [Doc. No. 12].

National Council, a non-profit corporation incorporated in Massachusetts with a principal place of business in Boston, Massachusetts, see Verified Am. Compl. ¶ 11 [Doc. No. 27], is a citizen of Massachusetts. Royal Blue, a limited liability company, owned by another limited liability company whose members are all citizens of Puerto Rico, see Def.'s Supp. Rule 7.1 Corporate Disclosure Statement, Attach. 1, ¶ 3 [Doc. No. 28-1], is a citizen of Puerto Rico. National Council alleges at least $164,781 in damages. See Verified Am. Compl. ¶ 83 [Doc. No. 27]. Therefore, because the Parties are completely diverse and the amount in controversy exceeds $75,000, this court has subject matter jurisdiction. See Andersen v. Vagaro, Inc., 57 F.4th 11, 14 (1st Cir. 2023).

B.      *Improper Venue*

Royal Blue next asserts that venue in the District of Massachusetts is improper and this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3). See Def.'s Mem. 13–14 [Doc. No. 22] (citing 28 U.S.C. § 1391(b)(2)).

When litigation includes a single defendant, venue is proper in the judicial district in which the defendant resides. 28 U.S.C. § 1391(b)(1). For the purposes of venue, a legal entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2); see also Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 11 n.6 (1st Cir. 2009) (finding that a California corporation resided in Rhode Island for venue purposes because the court had personal jurisdiction over the corporation).

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). Personal jurisdiction is waived "if not timely raised in the answer or a responsive pleading." Id. at 704 (quoting Fed. R. Civ. P. 12(h)). Royal Blue's failure

6

to challenge personal jurisdiction in its Motion to Dismiss [Doc. No. 17] renders the right waived. Accordingly, this court has personal jurisdiction over Royal Blue, Royal Blue is deemed to reside in the District of Massachusetts, and venue is therefore proper under 28 U.S.C. § 1391(b)(1).

Venue is also proper in a judicial district in which a substantial part of the events or omissions that gave rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Here, "a substantial part of the events or omissions giving rise to" National Council's fraudulent misrepresentation claims occurred in Massachusetts. Id. National Council states that in early 2023, Carpenter, on behalf of Royal Blue, called and spoke with National Council employees located and based in Massachusetts about holding the Conference at El Conquistador. See Verified Am. Compl. ¶¶ 22–34 [Doc. No. 27]. During these discussions with National Council employees in Massachusetts, Carpenter repeatedly told National Council that Royal Blue would have room for all 600 attendees. Id. ¶ 34. Carpenter then traveled to Boston, Massachusetts to meet with James and sell her on holding Conference at El Conquistador, making the same assurances regarding capacity. Id. ¶¶ 35–38. Accordingly, the representations made over the phone and in person to National Council employees located in Massachusetts comprise "substantial events" sufficient to make venue proper in Massachusetts. 28 U.S.C. § 1391(b)(2).

C.    *Arbitrability*

Royal Blue argues that claims raised by National Council in the Verified Amended Complaint [Doc. No. 27] are subject to the Agreement's arbitration clause and that the action should therefore be dismissed. Def.'s Mem. 4 [Doc. No. 22]. National Council argues that its fraudulent inducement claims are excepted from the Agreement's arbitration clause and adjudication in this court is appropriate. Pl.'s Opp'n 2 [Doc. No. 24]. Royal Blue relies on federal

law, see Def.'s Mem. 4–5 [Doc. No. 22],[3] and Plaintiff relies on Puerto Rico law, see Pl.'s Opp'n 2–5 [Doc. No. 24].

As the United States Supreme Court has explained, it is a "fundamental principle that arbitration is a matter of contract." Rent-A-Center, W., Inc., v. Jackson, 561 U.S. 63, 67 (2010) (citing the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2). Accordingly, "principles of state contract law control the determination of whether a valid agreement to arbitrate exists." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 475 (1st Cir. 2011) (quoting Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005)). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (citations omitted). Here, both parties agree that the court must examine the text of the arbitration clause to answer the question of arbitrability. See Def.'s Reply 2–3 [Doc. No. 31]; Pl.'s Opp'n 2–5 [Doc. No. 24].[4]

---

[3] The authorities cited by Royal Blue do not support dismissal of the action even if the court found the dispute arbitrable. Instead, under 9 U.S.C. § 3, if the court determines the dispute to be arbitrable, "the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" Id. (emphasis added). Similarly, Intergent N.V. v. Griana provides that, where a court finds an arbitration provision enforceable, the court must "grant a timely motion to compel arbitration." 344 F.3d 134, 142 (1st Cir. 2003). Here, Royal Blue has made no such request for an order compelling arbitration and has offered no explanation for why the court should dismiss, rather than stay, the action if arbitration were warranted. See Smith v. Spizzirri, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.") (footnote omitted).

[4] The court need not determine whether Massachusetts or Puerto Rico principles of contract interpretation govern the court's reading of the arbitration clause because the clause may be read plainly on its face. See Easthampton Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 92 (1st Cir. 2019) ("It is also a principle of Massachusetts law that '[m]ore specific contract terms ordinarily control over more general contract terms.'") (quoting Davis v. Dawson, Inc., 15 F.

Here, the Agreement's arbitration clause states that "any dispute in any way arising out of or relating to this agreement, <u>other than</u> disputes involving patents, trademarks, trade dress, copyrights, trade secrets, false advertising, false representation, unfair competition and/or infringement of intellectual property rights will be resolved by arbitration . . . ." Program Agreement ECF 12 [Doc. No. 3-1] (emphasis added). National Council alleges that Royal Blue fraudulently represented that it had capacity to accommodate 600 Conference attendees, inducing National Council to sign the Agreement, and then double-booked El Conquistador, <u>see</u> Verified Am. Compl. ¶¶ 80–91 [Doc. No. 27], and that the arbitration clause's exception for disputes involving "false representation" encompasses National Council's allegations, Pl.'s Opp'n 2 [Doc. No. 24] (quoting Program Agreement ECF 12 [Doc. No. 3-1]).

Royal Blue argues that the term "fraudulent representation" should be read to apply only to intellectual property claims covered by the Lanham Act, 15 U.S.C. §§ 1051 et seq., because all other terms in the exemption relate to Lanham Act intellectual property claims. Def.'s Mem. 7–8 [Doc. No. 22]; <u>see also</u> Def.'s Reply 2 [Doc. No. 31]. The arbitration clause, however, contains no reference to the Lanham Act, the main source of federal trademark law, nor does it contain any language that limits the scope of the terms in the clause. <u>See</u> Program Agreement ECF 12 [Doc. No. 3-1]. Read plainly, the arbitration clause exempts all fraudulent representation claims, not only those brought under the Lanham Act. <u>See</u> <u>Summit Packaging Systems, Inc. v. Kenyon & Kenyon</u>, 273 F.3d 9, 14 (1st Cir. 2001).

---

Supp. 2d 64, 109 (D. Mass. 1998)); <u>Bancredito Holding Corp. v. Driven Admin. Servs., LLC</u>, No. 24-1039, 2024 WL 3401157, at *5 (D.P.R. July 11, 2024) (citing 31 L.P.R.A. § 6342 (2020)).

Therefore, the court finds that National Council's claims fall within the Agreement's arbitration exemption, and that adjudication in this court, rather than resolution by arbitration, is proper.[5]

### D.   *Failure to State a Claim*

Royal Blue also moves to dismiss National Council's statutory Chapter 93A claim on the basis that Massachusetts law does not apply to the dispute. Def.'s Mem. 12–13 [Doc. No. 22]. In evaluating a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[5] Royal Blue also argues that National Council's claim is, at core, "a simple breach of contract claim[,]" and should be addressed in arbitration alongside Royal Blue's contract claims. Def.'s Mem. 10 [Doc. No. 22]. However, National Council did not move to dismiss Royal Blue's claims, only to stay the resolution pending a decision on the merits of National Council's claims in this court. See Pl.'s Mot. for Prelim. Inj. 8–12 ("Pl.'s Mot. for PI") [Doc. No. 3]. The court agrees that the AAA is the appropriate venue for Royal Blue's breach of contract claim if there is a valid contract and anticipates that, if National Council does not prevail on its fraudulent inducement claims in this court, the court will vacate the stay and allow the AAA proceeding to advance. See Def.'s Mem. 16–17 [Doc. No. 22].

Royal Blue argues that only Puerto Rico law should apply because the arbitration clause states that Puerto Rico law is the "governing law." Def.'s Mem. 12–13 [Doc. No. 22]; see also Program Agreement ECF 12 [Doc. No. 3-1]. Royal Blue contends further that under Puerto Rico law, the statutory claim must be dismissed because Puerto Rico has no similar analog to Massachusetts's consumer protection law. See Def.'s Mem. 12 [Doc. No. 22] (citing Chesebro v. Com. Ins. Co., 2018 WL 4511982, at *2 (D. Mass. July 18, 2018)). However, the arbitration clause's choice of law term provides only that disputes subject to arbitration will be solved pursuant to the laws of the State where the hotel is located. Program Agreement ECF 12 [Doc. No. 3-1]. Because the fraudulent misrepresentation claims are not subject to arbitration, see supra Part III.C, the term does not control the choice of law.

Instead, the court applies Massachusetts choice of law rules to determine which state's law applies to Nation Council's claims. See Viscito v. Nat'l Plan. Corp., 34 F.4th 78, 83 (1st Cir. 2022). "Massachusetts applies a 'functional approach to choice of law.'" Levin v. Dalva Bros., Inc., 459 F.3d 68, 74 (1st Cir. 2006) (quoting Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 638–39, 473 N.E.2d 662, 668 (1985)). "[T]his functional approach 'is explicitly guided by the Restatement (Second) of Conflict of Laws (1971).'" Id. (quoting Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass. App. Ct. 492, 496, 803 N.E.2d 750, 753 (2004)). Section 145 of the Restatement provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971) (emphasis added).

Chapter 93A protects Massachusetts consumers from, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen.

11

Laws ch. 93A, § 2. National Council's claims of fraudulent inducement predominantly sound in tort. See Ne. Data Sys. v. McDonnell Douglas Comput. Sys., 986 F.2d 607, 609–11 (1st Cir. 1993) (explaining distinction between tort and contract claims in context of Chapter 93A).

Here, National Council asserts that Royal Blue, through Carpenter, solicited National Council's business both over the phone and in-person in Massachusetts. See Verified Am. Compl. ¶¶ 25–38 [Doc. No. 27]. Massachusetts also has a strong policy interest in affording its consumers the protection of its laws. See In re Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation, 76 F. Supp. 3d 294, 307–308 (D. Mass. 2015). While events related to the claim also are alleged to have occurred in Puerto Rico, the court finds that National Council has plausibly alleged for purposes of the motion to dismiss that Massachusetts has the "most significant relationship" with National Council's statutory claim. See St. Paul Fire & Marine v. Birch Stewart, 233 F. Supp. 2d 171, 175–177 (D. Mass. 2002) (explaining that a qualitative weighing of factors is necessary when facts do "not weigh overwhelmingly in favor of one state[.]").

Further, Royal Blue's contention that National Council's Chapter 93A claim must be dismissed because it should have been brought under Section 11, see Def.'s Mem. 13 [Doc. No. 22], is misplaced. Section 11, which imposes additional jurisdictional restraints, governs parties who are engaged in "trade or commerce." Mass. Gen. Laws ch. 93A, § 11. Taking the Verified Amended Complaint [Doc. No. 27] as true, National Council was not engaged in "trade or commerce" when it contracted with Royal Blue because it was acting in furtherance of its core mission and bringing the claim under Section 9 is therefore appropriate. See South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., 183 F. Supp. 3d. 197, 215–218 (D. Mass. 2016) (denying summary judgment because a genuine issue of material fact existed as to whether a church was engaged in trade or commerce when it contracted for repair work). Accordingly,

National Council sufficiently pleaded its Chapter 93A claim to survive a challenge pursuant to Fed. R. Civ. P. 12(b)(6).

> E.    *Change of Venue*

Finally, the court addresses Royal Blue's passing reference to transfer pursuant 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). Def.'s Mem. 15–16 [Doc. No. 22]. Because venue is proper, see supra Part III.B, transfer is not required. See 28 U.S.C. § 1406(a). The court analyzes whether transfer is appropriate under the doctrine of *forum non conveniens*. See 28 U.S.C. § 1404(a).

In analyzing a motion to transfer venue, a plaintiff's choice of forum deserves presumptive weight. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 719 (1st Cir. 1996) ("At the outset, there is a presumption in favor of [the plaintiff's] chosen forum of Massachusetts."). To rebut that presumption, the defendant must show that its choice of venue is "substantially more convenient" than the plaintiff's. Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 17 (D. Mass. 2002). Royal Blue has failed to make any such showing and would be hard-pressed to do so. National Council is at home in Massachusetts. See Verified Am. Compl. ¶¶ 11, 18 [Doc. No. 27]. All of National Council's witnesses are based in Massachusetts and at least one of Royal Blue's witnesses, Carpenter, is based in New York. Id. ¶ 23. Massachusetts has a localized interest in deciding National Council's Massachusetts statutory claim. See Mass. Gen. Laws ch. 93A, § 9. Further, even if Puerto Rico law were to apply to National Council's common law claim, this court is competent to apply such law. See BMJ Foods P.R., Inc. v. Metromedia Steakhouses Co., L.P., 562 F. Supp. 2d 229, 234 (D.P.R. 2008) (explaining that other jurisdictions "are fully capable of resolving claims brought under [Puerto Rico law.]"). Accordingly, Royal Blue has not rebutted the presumptive weight afforded to National Council's choice of venue, and the court declines to transfer the case to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. § 1404.

IV.     **Preliminary Injunction**

National Council seeks a stay of the arbitration proceeding initiated by Royal Blue. Pl.'s Mot. for PI 1 [Doc. No. 3]; see also Verified Am. Compl. ¶¶ 92–100 [Doc. No. 27]. Royal Blue argues that a preliminary injunction is not warranted because National Council's claims are arbitrable under the arbitration clause and, in any event, the arbitration concerns Royal Blue's own breach of contract claims which, it asserts, are "unquestionably" arbitrable. Def.'s Mem. 16 [Doc. No. 22].

Because "the power to enjoin an arbitration is 'the concomitant of the power to compel arbitration,' . . . the same provision of the FAA, 9 U.S.C. § 4, authorizes both types of orders." PCS 2000 LP v. Romulus Telecommunications, Inc., 148 F.3d 32, 35 (1st Cir. 1998) (quoting Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co., 643 F.2d 863, 868 (1st Cir. 1981)). In order to obtain an order compelling arbitration, the party seeking the order must establish "[1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (internal quotations omitted). If a party seeking to compel arbitration makes that showing, "the court has to send the dispute to arbitration," McKenzie v. Brannan, 19 F.4th 8, 15 (1st Cir. 2021) (internal quotations omitted), "unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself . . . or claims that the agreement to arbitrate was never concluded," id. (citing Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 301 (2010) (internal quotations omitted). That exception follows where "arbitration is a matter of contract and a party cannot be required to submit to arbitration [in] any dispute which he has not agreed so to submit." AT&T Techs. Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986) (internal quotations omitted); see also Volt Info. Scis. v. Bd. of Trs. of

14

Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so[.]"). Here, because National Council did not agree to submit fraud claims to arbitration, see supra Part III.C, National Council cannot be compelled to arbitrate these claims. And, where these same claims are National Council's defenses to Royal Blue's contract claims, National Council is entitled to a stay of arbitration so that those defenses may be resolved by the court.

National Council is also entitled to a stay of the arbitration proceeding under the traditional four-factor test. See, e.g., Allstate Ins. Co. v. OneBeacon Am. Ins. Co., 989 F. Supp. 2d 143, 149 (D. Mass. 2013) (applying the preliminary injunction standard to a motion to enjoin arbitration). In evaluating a motion for a preliminary injunction, the court considers:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. v. Monroig–Zayas, 445 F.3d 13, 17–18 (1st Cir. 2006) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)).

Here, National Council has demonstrated a likelihood of success on the merits of its claim for declaratory relief that this dispute is arbitrable. More than that, where National Council has verified its Amended Complaint [Doc. No. 27] and Royal Blue has submitted no opposing evidence as to the allegedly fraudulently induced contract formation, the record as it presently stands supports a likelihood of success on the merits of National Council's fraudulent misrepresentation claim. If National Council establishes that claim and invalidates the contract, an arbitration on Royal Blue's breach of contract claim would be futile. The harm suffered by the parties in undergoing a futile arbitration is sufficient for the preliminary injunction standard. See, e.g., McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192, 1194 (8th Cir.

15

1997) (explaining that when a dispute is non-arbitrable, "the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award.").

Similarly, the balance of the equities tips in National Council's favor because, if the court does not enjoin the arbitration proceedings, National Council will be required to expend time and resources litigating claims that Royal Blue may have no right to pursue, and may be required to return to the court to set aside an arbitration award. See, e.g., LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Local 63, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988) (plaintiff "was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate."). Finally, forcing National Council to arbitrate its fraud claims when it has not agreed to would be counter to public interest. See, e.g., UBS Fin. Servs. Inc. v. Carilion Clinic, 880 F.Supp.2d 724, 732 (E.D. Va. 2012), aff'd 706 F.3d 319 (4th Cir. 2013), (citing Volt Info. Scis., Inc., 489 U.S. at 478).

### V.    Conclusion

For the foregoing reasons, The National Council's Motion for a Preliminary Injunction Staying Arbitration [Doc. No. 3] is hereby GRANTED, and Royal Blue's Motion to Dismiss [Doc. No. 17] is hereby DENIED. The AAA arbitration initiated by Royal Blue is stayed pending resolution of the claims in National Council's Verified Amended Complaint [Doc. No. 27]. Royal Blue shall file its Answer to the Verified Amended Complaint [Doc. No. 27] no later than April 6, 2026.

IT IS SO ORDERED.

March 23, 2026                                      /s/ Indira Talwani
                                                   United States District Judge

16